FIRST NATIONAL BANK OF BATESVILLE v. BOARD OF EQUALIZATION OF INDEPENDENCE COUNTY.

Opinion delivered November 15, 1909.

1. TAXATION—NATIONAL BANKS.—A State may tax shares of stock in a national bank at their actual value, without regard to the fact that a part or the whole of the capital stock of the bank is invested in non-taxable bonds, for taxation of the shares of stock is not taxation either of the capital stock of the bank or of the nontaxable bonds in which the same may be invested. (Page 337.)

2. SAME—MODE OF TAXING BANK STOCK.—The revenue statutes of this State contemplate that the shares of stock in banks shall be taxed and not the capital stock of the bank itself; the tax to be assessed *in solido* against the bank as trustee or agent for its stockholders, and to be paid by the bank and collected from its stockholders. (Page 341.)

Appeal from Independence Circuit Court; *Frederick D. Fulkerson,* Judge; affirmed.

*Ernest Neill* and *McCaleb & Reeder,* for appellant.

1. Capital stock of a national bank invested in United States bonds is not subject to taxation. Rev. Stat. U. S. § 3701; 2 Pet. 449; 2 Black (U. S.) 620. The capital stock of a national bank cannot be assessed by State authority. 4 Biss. 472; 53 N. Y. 49; 3 Dill. 298; 52 S. E. 494. The only theory upon which this assessment could be upheld is that the effect of the action of the board of equalization was to assess the shares of the shareholders; but that was not done nor attempted. The record shows that it was the property of the bank which was assessed, and not the shares of the stockholders. 173 U. S. 664, 43 Law. Ed. 1038; 166 U. S. 446.

2. The proceeding was void on account of discrimination. See agreed statement of facts. The authority conferred by § 5219, Rev. Stat. U. S., to tax shares in a national bank is only upon express condition that such tax shall not be at a greater rate than is assessed upon moneyed capital in the hands of individual citizens of the State. 23 Wall. 480; 113 U. S. 689; 4 Wall. 459; 3 Wall. 573; 101 U. S. 148; *Id.* 153; 121 U. S. 535.

Sections 6920, 6921 and 6924, Kirby's Digest, clearly show that it was the intention of the Legislature to tax the capital of banks—the working capital employed by them in banking, except such portions thereof as had been invested in United States bonds or other nontaxable securities for more than one year prior to the first Monday in June of the current year. Sections 6922 and 6923, authorizing taxation of shares in banks. were intended to reach property not covered by the previous sections, *i. e.*, shares of stock as distinguished from the capital of banks.

*Hal L. Norwood,* Attorney General, and *C. A. Cunningham,* Assistant; *Sam M. Casey* and *Morris M. Cohn,* for appellee.

1. Construing the Federal statutes and the several sections of our revenue law bearing upon the question, together, the assessment was against the stockholders, and not against the bank, and the amount invested in United States bonds was properly included. Rev. Stat. U. S. § § 5210, 5219; Kirby's Dig. § § 6919 to 6924 inclusive, § 6902. The law merely requires the bank to pay the whole tax, as the agent of the stockholders, giving it a lien on the shares of stock for the taxes paid and authorizing it to deduct the same from the dividend accruing thereon. It does not attempt to provide for the taxation of the capital of a bank. 166 U. S. 440; 9 Wall. 363; 3 Wall. 573; 4 Wall. 244; 23 Wall. 481; 125 U. S. 60; 167 U. S. 461; 173 U. S. 664; 7 Fed. 518. In estimating the value of the shares of stock everything may be considered that is included in the statement required of banks under section 6920, Kirby's Dig. 94 U. S. 415.

2. There is no discrimination, and authorities cited by appellant on this point do not apply because there is no showing that the other banks of Independence County had their capital invested in bonds or that the assessment amounted to a discrim-

ination. To invalidate an assessment, it must be shown that there was a higher burden of taxation imposed upon the money thus invested than was imposed upon other moneyed capital. 31 Fed. 505. Exact equality is not required. 116 Cal. 30; 173 U. S. 205. See also notes to § 5219, Rev. Stat. U. S.; 5 Fed. Stat. Ann. 159.

McCULLOCH, C. J. Appellant, a national banking corporation domiciled and doing business at Batesville, Arkansas, listed with the tax assessor the amount of its capital stock and undivided profits, deducting therefrom the amount of capital stock invested in real estate and in bonds of the United States. The county board of equalization struck out the deduction for said investment in bonds, and on successive appeals to the county and circuit courts the action of the board was sustained. The bank appealed to this court.

The question at issue on this appeal is whether, under the statutes of this State and the Federal statutes, the capital stock of a national bank invested in bonds of the United States can be included in assessments for taxation. This question involves primarily a construction of our own statutes—whether they authorize an assessment against shares of stock in banks or against the capital stock of the bank itself, or against both. Let it be understood in the beginning that a State cannot levy a tax upon bonds of the United States, for such property is not subject to taxation. Neither can the State levy a tax upon the capital and assets of a national bank. This, too, is exempt from State taxation. The limit of the taxing power of a State with respect to a national bank is as to the real estate owned by the institution and the shares of stock therein. U. S. Rev. Stat. § § 5214, 5219.

Section 5214 declares that, in lieu of all existing taxation, a national bank shall semi-annually pay to the treasurer of the United States one-half of one per centum upon the average amount of its notes in circulation, one-fourth of one per centum upon the average amount of deposits, and one-fourth of one per centum upon the average amount of its capital stock not invested in United States bonds.

Sec. 5219 reads as follows: "Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such

shares, in assessing taxes imposed by authority of the State within which the association is located; but the Legislature of each State may determine and direct the manner and place of taxing all the shares of national banking associations located within the State, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State, and that the shares of any national banking association owned by nonresidents of any State shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either State, county or municipal taxes, to the same extent, according to its value, as other real property is taxed."

The latter section is declared to be the limit of the State's power to tax national banks. "This section, then, of the Revised Statutes is the measure of the power of a State to tax national banks, their property, or their franchises. By its unambiguous provisions the power is confined to a taxation of the shares of stock in the names of the shareholders and to an assessment of the real estate of the bank. Any tax, therefore, which is in excess of, and not in conformity to, these requirements, is void." *Owensboro Nat. Bank* v. *Owensboro*, 173 U. S. 664; *Third Nat. Bank* v. *Stone*, 174 U. S. 432; *Rosenblatt* v. *Johnston*, 104 U. S. 462.

The capital stock of a national bank is exempt from State taxation. So are United States bonds exempt from State taxation. But a State may tax shares of stock in a national bank at their actual value, without regard to the fact that a part or the whole of the capital stock of the bank may be invested in non-taxable bonds and securities; for taxation of the shares of stock is not taxation either of the capital stock of the bank or of the non-taxable bonds in which the same may be invested. *Van Allen* v. *Assessors*, 3 Wall. 573; *People* v. *Tax Commissioners*, 4 Wall. 244; *National Bank* v. *Commonwealth*, 9 Wall. 353; *Hepburn* v. *School Directors*, 23 Wall. 480; *Palmer* v. *McMahon*, 133 U. S. 660; *Bank of Commerce* v. *Tennessee*, 161 U. S. 134; *Aberdeen Bank* v. *Chehalis County*, 166 U. S. 440; *Merchants, etc., Bank* v. *Pennsylvania*, 167 U S. 461.

The question which arises, then, is whether the assessment in this State is for the purpose of taxing the capital stock of the bank, or for the purpose of taxing the shares of stock, or both. This question is not entirely free from doubt. It is certain, however, that it is not intended to tax both the capital of the corporation and the shares of stock. A section of the Revenue Act provides that "no person shall be required to include in his statement, as a part of the personal property, moneys, credits, investments in bonds, stocks, joint stock companies or otherwise which he is required to list, any share or portion of the capital stock or property of any company or corporation which is required to list or return its capital and property for taxation in this State." Section 6902, Kirby's Digest; *Dallas County* v. *Banks,* 87 Ark. 484.

The other provisions of our revenue laws relating especially to banking concerns form a part of the General Revenue Act of 1883, and, as amended by subsequent acts, read as follows:

"Sec. 29. Every corporation, company, individual person or association of persons, whether authorized by law to issue notes for circulation or not, that shall keep an office, counting house, or other place for the transaction of business in this State, and shall discount, buy or sell exchange, notes, bonds, stocks, certificates of public debt, or other evidences of debt, claims or demands, with a view to profit, shall be deemed a bank within the meaning of this act.

"Sec. 30. Every bank shall annually on the first Monday in July in each year make out and deliver to the assessor a correct statement attested by the oath of the president and cashier of such bank, or, if there be no president or cashier, then by the oath of the principal manager and principal accountant of such bank, setting forth:

"*First.* The amount of capital, whether divided into shares or not, actually paid in or secured to be paid by note or otherwise, or in any manner procured or furnished, to be employed in its banking business.

"*Second.* The amount of undivided profits arising from such business belonging to the bank, whether in its possession or subject to its control, or loaned or otherwise invested for its benefit.

"*Third*. The value of moneys, credits or other personal property converted into bonds or other securities of the United States, or of this State, not taxed in the year immediately preceding the first Monday in June of the year in which the assessment is made, and which said bonds or securities on said first Monday in June were in the possession or control of such bank.

"*Fourth*. The amount loaned to or deposited with such bank for a term certain, or which by agreement or understanding between the parties is not to be withdrawn on demand, excepting the amount which may have been deposited with any bank established as a clearing house for the redemption of the notes of banks making such deposits, and on which no interest is charged or received by the bank making such deposit.

"Which several amounts shall truly represent the condition of the means, property and assets of the bank described herein, as they shall have existed on the first Monday in June, and shall be added together, and the gross sum so produced shall be deemed the amount of property employed in banking, for the then current year, by such bank.

"The shares of persons in banks taxable by law that the holders or owners thereof are not required to list in person by the provisions of this act shall be listed by the president or principal accounting officer or agent thereof, showing the name or names of the person owning or holding the same.

"The taxes assessed upon the shares of stock thus listed shall be paid by the corporation, or company, respectively, and they may recover from the owner or owners of such shares the amount of taxes to be paid by them, or deduct the same from the dividend accruing on such shares, and the amount paid shall be a lien on such shares respectively, and shall be paid before a transfer of such stock or shares can be made.

"Sec. 31. The assessor shall return to the clerk of the county court the statement described in section thirty made by any bank in his county, and the amount so returned shall be placed upon the tax books of the county and taxed as other personal property in such city, town, ward or school districts as the same may be situated." Sections 6919-6924 Kirby's Digest.

It is seen that these sections apply to *all* banks, and of course include national banks. If the statute be held to provide for the taxation of the property of national banks, it is to that extent void, for this is beyond the taxing power of the State; and, unless the statute be held to tax the shares of stock, instead of the property of the bank itself, then the shares of stock in a national bank escape State taxation altogether. Did the Legislature intend any such result?

This court has never construed the statute in a way that could have any bearing on the present question. In *Hempstead County* v. *Hempstead County Bank,* 73 Ark. 515, we merely held that, in summing up the valuation of the property of a bank for taxation purposes, the amount of capital stock invested in real estate should be deducted. But this is not inconsistent with the conclusion, either one way or the other, on the proposition whether the shares of stock are to be taxed.

In the State of Washington a statute is in force which, we think, is, so far as the present question is concerned, substantially like our statute. It reads as follows:

"Sec. 21. Every individual, firm, corporation or association of persons carrying on a general banking business in this State, whether the same has been organized under the banking laws of this State or of the United States, or conducted under the style of private bankers, shall be assessed and taxed in the county, town, city or village where such bank or banking association is located, and not elsewhere, in the following manner: Annually, at such times as provided for listing property for taxation, every such bank or banking association as contemplated in this section shall, by its accounting officer, furnish the county or city assessor a statement, verified by oath, giving the amount of paid up capital stock, the amount of surplus or reserve fund and the amount of undivided profits of such bank or banking association. The aggregate amount of capital, surplus and undivided profits shall be assessed and taxed as other like property in this State is assessed and taxed; *provided,* at the time of listing the capital stock, the amount and description of its legally authorized investments in real estate shall be assessed and taxed as other real estate is assessed and taxed under this act, and the assessor shall deduct the amount of such investments in real estate from the

aggregate amount of such capital, surplus and undivided profits, and the remainder then taxed as above provided."

"Sec. 23. Each bank and banking association shall be liable to pay any taxes assessed against them as the agent of each of its shareholders, owners or owner, under the provisions of this act, and may pay the same out of their undivided profit account, or charge the same to their expense account, or to the accounts of such shareholders, owners or owner, in proportion to their ownership."

The Supreme Court of that State, in the case of *Paul* v. *McGraw,* 3 Wash. 296, construed the statute to authorize the taxation of shares of stock of all banks, including national banks, the same to be assessed in the name of the bank and charged against shareholders. The court in its opinion summed up the reasons for that conclusion as follows: "We know that the Legislature must have had in mind: (1) That the capital of national banks could not be taxed at all. (2) That the shares of such banks could be taxed, provided that the shares of State banks were taxed, and at the same rates as State bank shares and other moneyed capital. (3) That the shares of nonresidents of the State could only be taxed at the place where the bank is located. (4) That, while all the property in the State is required to be taxed, it can only be taxed once. (5) That the very easiest and simplest way to collect the tax on property of this kind is by the garnishment method approved in *National Bank* v. *Commonwealth, supra,* and actually in operation in the State and Territory for many years."

In the later case of *First National Bank* v. *Chehalis County,* 66 Wash. 64, the court held that (quoting from the syllabus) "the assessment of the capital stock of a national bank, made to the bank *in solido,* is valid." The latter case went to the Supreme Court of the United States (*First National Bank* v. *Chehalis County,* 166 U. S. 440), and the conclusion reached by the Washington court was sustained. Mr. Justice Shiras, in delivering the opinion of the court in that case, said: "If this section (referring to sec. 21 above quoted) stood alone, there might be ground for the contention that it contemplates taxation of the capital of the bank. But section 23 of the statute provides that 'each bank and banking association shall be liable to pay any

taxes assessed against them as the agent of each of its shareholders, owners or owner under the provisions of this act, and may pay the same out of their individual profit account or charge the same to their expense account, or to the accounts of such shareholders, owners or owner in proportion to their ownership.' The Supreme Court of Washington held in this case that these two sections are to be read together, and that, so read, their provisions are not inconsistent with those of the Federal statute. That the two sections of the State law should be read together is obviously proper, and, at any rate, we are bound by the judgment of the Supreme Court of the State in the mere matter of the construction of that law."

These decisions are precisely in point, for they construe statutes which are substantially like our own, and their persuasive force cannot be escaped. The reasoning upon which they are based goes to sustain the contention that our statutes are intended to tax the shares of stock in banks, and not to tax the capital of the bank itself, and that this taxation and the method in which it is enforced neither offend against the Federal statutes nor transcend the taxing powers of the State. The Federal statutes do not restrict the State's form or method of levying and collecting the tax. If the tax is levied on the shares of stock, the cases already cited establish the principle that the tax may be collected by assessment *in solido* against the bank as the agent of its shareholders..

Mr. Justice Miller, in delivering the opinion of the Supreme Court of the United States in *National Bank* v. *Commonwealth,* 9 Wall. 353, said: "It is strongly urged that it is to be deemed a tax on the capital of the bank, because the law requires the officers of the bank to pay this tax on the shares of its stockholders. Whether the State has the right to do this we will presently consider, but the fact that it has attempted to do it does not prove that the tax is anything else than a tax on these shares.".

It is true the Supreme Court of the United States, in *Owensboro National Bank* v. *Owensboro, supra,* said that a tax on a franchise and property of a national bank was not equivalent to a tax on the shares of stock therein, or *vice versa;* for it said that that rule would render illegal a State tax on shares of stock.

But that was said in a case which involved the validity of a tax which had been held to be a tax on the franchise of a national bank. No intimation is found in that opinion of an intention to overrule former opinions in which it was held that an assessment *in solido* against the bank, paid by the bank and collected from its shareholders, is valid.

We are therefore of the opinion that the revenue statutes of this State now under consideration provide for the taxation of shares of stock, and not the capital stock of the bank itself; and that the method of assessment prescribed by this statute, in requiring the bank to file a schedule setting forth the things enumerated, is merely intended as a method of arriving at the valuation of the shares of stock. The statute contemplates the assessment of the tax *in solido* against the bank as trustee for, or agent of, its stockholders, the same to be paid by the bank and collected from its stockholders. The statute meets every requirement of the Federal statute. It applies to all banking concerns alike, either State or National, without discrimination, and provides that the shares of stock "be taxed in the city or town where the bank is located." Under any other construction of the statute, shares of stock in national banks would escape taxation altogether.

This construction does no violence, as contended, to the language of the statute. The third subdivision of the section hereinbefore quoted does not, as claimed, exempt "the value of moneys, credits or other personal property converted into bonds or other securities of the United States, or of this State," during the preceding year. For it expressly requires banks to list such items. Nor does the fact that the statute requires the listing of time deposits show that this construction was not intended. Such items constitute the working capital of the bank, and may well be considered in arriving at a correct estimate of the value of the assets of the bank or of its shares of stock.

It is contended that the assessment in this case discriminated against the shares of stock in this bank; and in support of this contention it is shown that the assessor and board of equalization had failed to assess the shares of stock of three State banks in the same county. This appears from an agreed statement of facts in the record. But we do not understand from this that

the shares of stock escaped taxation altogether.  What we understand the stipulation to mean is that the shares of stock in the State banks named were not separately assessed against the individual shareholders.  There is no showing here that there was any discrimination against this bank in failing to assess the shares of stock therein in the same manner in which shares of stock in other like institutions were assessed.

We are of the opinion that the judgment of the circuit court is correct, and the same is affirmed.